*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES, <br>            Plaintiff, <br>     v. <br> ANDREW LUCAS, <br>            Defendant. | Crim. No.: 14-52(FLW) <br><br> **MEMORANDUM OPINION and ORDER** |

**WOLFSON, District Judge**:

In this instant matter, Defendant Andrew Lucas ("Defendant" or "Lucas") moves for a judgment of acquittal pursuant to Fed. R. Civ. P. 29(a). A jury has found Defendant guilty of all eleven counts charged in the Indictment, which include: wire fraud (Count One); (2) money laundering (Count Two); (3) loan application fraud; (4) false statements to the IRS (Counts Four, Six, and Eight); aggravated identity theft (Counts Five, Seven and Nine); obstruction of a grand jury (Count Ten); and falsification of records in a federal investigation (Count Eleven). During the trial, Defendant moved for a judgment of acquittal at the close of the Government's case-in-chief; Defendant then renewed his motion at the close of all the evidence. The Court notes that Defendant did not submit any briefs in connection with his Rule 29 motions. Instead, Defendant's counsel placed his arguments on the record.[1] The Court denied the motion on the record, and now, renders this written opinion setting forth the reasoning for the denial.

---

[1] Defendant did not file any post-trial motions.

1

**BACKGROUND**

The following is a brief recitation of the Government's case. In or around December 2009, Lucas, an investment advisor, sought to purchase Diamond Developers from its original owners for the price of $775,000. Diamond Developers owned a single asset – a tract of farmland known as Burke Farm, located in Manalapan, New Jersey. To finance the purchase, on or about December 15, 2009, Lucas submitted a loan application to Central Jersey Bank (the "Bank") requesting a mortgage loan of $525,000. At trial, the Government presented numerous items of documentary evidence demonstrating that the application was rife with false information. Specifically, the evidence showed that Lucas submitted to the bank "doctored-up" tax returns, which included inaccurate, overstated income and assets. Furthermore, the Government alleged that Lucas represented to the Bank that he was not under an IRS audit, when in fact he was at the time of the loan process.

Along with his loan application, Lucas also represented to the Bank that he had the funds to make a down payment of $250,000 to complete the purchase of Burke Farm. During the trial, the Government maintained that Lucas did not personally have the funds to pay the Bank; rather, the Government accused Lucas of defrauding Bobby Janowski, one of his financial-planning clients, to obtain $250,000. In that regard, Mr. Janowski testified that Lucas approached him with an investment opportunity. According to Mr. Janowski, Lucas asked him, and Mr. Janowski agreed, to invest $250,000 in a company named VLM Investments, LLC ("VLM"). Lucas provided Mr. Janowski with a fake Note whereby VLM promised to pay Mr. Janowski 6% interest with repayment by March 2012, purportedly securing Mr. Janowski's investment with VLM's assets and equipment. The Government introduced evidence to show that at the time Lucas approached Mr. Janowski with the investment opportunity, VLM was not in existence. The

Government also demonstrated with documentary evidence that Lucas did not use the $250,000 investment funds from Mr. Janowski for any investment purposes; instead, Lucas used the funds to purchase Burke Farm, a fact that was not disclosed to Mr. Janowski.

In fact, evidence revealed that Lucas created VLM after Janowski agreed to invest $250,000. As part of Lucas' scheme, the Government showed, through the testimony of Thomas Littlefield and other documentary evidence, that Lucas used the personal information of his relative, Mr. Littlefield, without Mr. Littlefield's knowledge, to form VLM in the State of New Jersey. Furthermore, as evidence has shown, Lucas attempted to legitimize VLM by applying for an employer identification number ("EIN") from the IRS using the social security number of Mr. Littlefield, again without Mr. Littlefield's knowledge or consent, and Lucas opened a bank account associated with VLM. Lucas wired $250,000 from Janowski's TD Ameritrade account to VLM's bank account. Consistent with certain evidence, it was the Government's position that Lucas used those funds to make his down payment for the purchase of Burke Farm. The Government further introduced evidence that Lucas filed false tax returns for VLM in 2011 and 2012; and, Lucas affixed Mr. Littlefield's name, without Mr. Littlefield's knowledge, on one of the tax returns.

In February 2013, Lucas was served with grand jury subpoenas, pursuant to a federal grand jury investigation, as the record custodian for three companies, including VLM and Diamond Developers. The Government argued to the jury, and produced testimony as well as competent evidence, that Lucas produced false and fraudulent documents in response to the subpoenas; that is, Lucas created at least two of the false documents after receiving the subpoenas and backdated them in an effort to conceal his fraud.

After the close of the Government's case, defense counsel moved for a judgment of acquittal on Counts One and Two of the Indictment. Counsel argued, simply, that the Government

3

had failed to present evidence on which a reasonable juror could conclude that Lucas had the requisite intent to commit wire fraud; and, without intent, Count Two should be rendered dismissed as moot. The Court reserved its ruling under Rule 29(b). *See* Fed. R. Civ. P. 29 (b)("The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict).

Next, the defense presented its case by offering testimony from defendant Lucas. As more details regarding his testimony will be provided later in this Opinion, the Court will not recite them here. After the close of all the evidence, Defendant renewed his motion for a judgment of acquittal. The Court reserved its ruling again to allow the jury to deliberate. After a few hours of deliberation, the jury found Defendant guilty of all counts. Subsequently, the Court denied Defendant's renewed Rule 29 motion and reserved rendering a written opinion.

## DISCUSSION

### I. Standard of Review

Federal Rule of Criminal Procedure 29 provides that the district court, upon the motion of a defendant or upon its own motion, shall enter a judgment of acquittal if "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In ruling on a Rule 29 motion, the district court must determine whether any rational trier of fact could have found proof of the defendant's guilt beyond a reasonable doubt based upon the available evidence presented at trial. *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002), (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In that connection, the Third Circuit has cautioned strongly that the district court "be ever vigilant in the context of . . . [a Rule 29 motion] not to usurp the role of the jury by

4

weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006).

The Court must view the evidence in its entirety, and in the light most favorable to the Government. *United States v. Hoffecker*, 530 F.3d 137, 146 (3d Cir. 2008). The Government is also entitled to "the benefit of inferences that may be drawn from the evidence[,] and the evidence may be considered probative even if it is circumstantial." *United States v. Patrick*, 985 F. Supp. 543, 548 (E.D.Pa. 1997) (citing *United States v. Pecora*, 798 F.2d 614, 618 (3d Cir. 1986)); *see United States v. Griffith*, 17 F.3d 865, 872 (3d Cir. 1994). Hence, the movant bears a heavy burden establishing that the evidence presented by the Government during trial was insufficient to support a conviction. *See United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990); *United States v. Young*, 334 Fed. Appx. 477, 480 (3d Cir. 2009) (the movant "bears a heavy burden in light of our 'particularly deferential' standard of review in cases challenging the sufficiency of the evidence" (citations omitted)).

In fact, the Third Circuit has cautioned that acquittal should "be confined to cases where the prosecution failure is clear." *Smith*, 294 F.3d at 477; *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)). "The evidence need not unequivocally point to the defendant's guilt as long as it permits the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Pungitore*, 910 F.2d 1084, 1129 (3d Cir. 1990). "[T]he question is whether reasonable minds [could find] guilt beyond a reasonable doubt, not whether reasonable minds must [find] guilt beyond a reasonable doubt." *United States v. Ellisor*, 522 F.3d 1255, 1271 (11th Cir. 2008). The jury is free to draw between reasonable interpretations of the evidence presented at trial. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007). Accordingly, an acquittal should only be reserved in instances where "no reasonable juror could

5

accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Salmon*, 944 F.2d 1106, 1113 (3d Cir. 1991); *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987).

Because the Court reserved its decision on each of Defendant's requests under Rule 29, "it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Civ. P. 29(b). Therefore, the Court will first assess evidence presented in the Government's case, and then assess all the evidence at the close of Defendant's case.

**II.     The Government's Case**

As I noted above, Defendant only moved for a judgment of acquittal on Counts One and Two of the Indictment at the close of the Government's case.  As such, I will only discuss these two counts.  To prove wire fraud, the Government must establish the following three elements: "(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of . . . interstate wire communications in furtherance of the scheme." *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001), abrogated on other grounds by *Skilling v. United States*, 561 U.S. 358 (2010). The Government may prove intent to defraud by way of circumstantial evidence. *See United States v. Riley*, 621 F.3d 312, 333 (3d Cir. 2010). The scheme at issue may involve an "affirmative misrepresentation," but can also be predicated upon "omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1415 (3d Cir. 1991) (quoting *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1978)).

Here, I find that the Government presented more than sufficient evidence for the jury to find beyond a reasonable doubt that Lucas intended to defraud Bobby Janowski in order to purchase Burke Farm.  Indeed, the scheme to defraud was established, first, through the testimony

of Mr. Janowski. Mr. Janowski testified that Lucas had told him that VLM was a company that Lucas' friend owned, and that Lucas was asking Mr. Janowski to invest in VLM stock. Mr. Janowski further testified that he attempted to find VLM in the newspaper to no avail. When questioned about Burke Farm, Diamond Developers or Mr. Littlefield, Mr. Janowski had no knowledge of their existence. In fact, Mr. Janowski testified that it was not until he spoke to the Government that he became aware of these entities. Importantly, Mr. Janowski made clear in his testimony that he signed a note in connection with the purported $250,000 investment funds on February 15, 2010, three days before VLM was formed in New Jersey.

In that regard, the Government presented documentary evidence showing that Lucas, three days after meeting with Mr. Janowski, applied for an EIN, opened a bank account for VLM, and used Mr. Littlefield's information in connection with the formation of VLM and all subsequent transactions. Indeed, Mr. Littlefield, who was also a witness at trial, testified that he had no knowledge of VLM's existence or any corporate transactions conducted on his behalf, nor did he give permission for Lucas to use his identity and name in connection with VLM's business.

Thus, when considering all the evidence presented by the Government, there is sufficient circumstantial evidence to permit the jury to find beyond a reasonable doubt that Lucas intended to defraud Mr. Janowski by forming VLM and that Lucas used the proceeds of his fraud to purchase Burke Farm.

Next, to prove a violation of § 1957(a), charged in Count Two, the Government is required to show that (1) the defendant engaged or attempted to engage (2) in a monetary transaction (3) in criminally derived property that is of a value greater than $10,000 (4) knowing that the property is derived from unlawful activity, and (5) the property is, in fact, derived from specified unlawful

activity. *United States v. Sokolow*, 91 F.3d 396, 408 (3d Cir. 1996); *United States v. Podlucky*, 567 Fed. Appx. 139, 145 n.12 (3d Cir. 2014).

Here, I find that the Government has also presented sufficient evidence to permit the jury to find beyond a reasonable doubt that Lucas committed money laundering. As I have delineated, the Government introduced evidence and testimony that Lucas fraudulently obtained $250,000 from Mr. Janowski, and those funds were transferred from Mr. Janowski's investment account to VLM's bank account. The evidence also demonstrated that the money was then transferred from VLM to an account owned by a law firm associated with the Burke Farm purchase. Thus, there was sufficient evidence for a jury to find that Lucas engaged in a monetary transaction involving funds that Lucas obtain from his alleged fraudulent scheme.

Accordingly, based on the foregoing, Defendant's Rule 29 motion made at the close of the Government's case is denied.

## II.     Defendant's Case

As part of his defense case, Lucas's father, Edward Lucas, and Lucas himself, testified. On the stand, Lucas contradicted the testimony of other witnesses. For example, Lucas explained that before the formation of VLM, he had informed Mr. Littlefield that Mr. Littlefield would be the managing/member of the new company, but at the same time, Lucas conceded that he did not consult with Mr. Littlefield regarding the day-to-day operations of VLM. Lucas also attempted to explain that the money he used to pay for the down payment of Burke Farm consists of $105,000 worth of gold coins and thimbles, and $200,000 that he expected to receive from his grandmother. However, Lucas also conceded that he never mentioned the coins, or thimbles, or the $200,000 to investigators. Furthermore, regarding his relationship with Mr. Janowski, Lucas testified that he had ceased to be Mr. Janowski's financial advisor by September 2009. Notwithstanding that fact,

Lucas continued to administer the $2,500 payments to Janowski for living expenses, a responsibility that Lucas had as Mr. Janowski's advisor. Lucas also characterized the $250,000 from Mr. Janowski's account to VLM as a loan, not an investment. I note that while Edward Lucas testified, he did not have first-hand knowledge of VLM's formation or the loan application for Burke Farm. In that regard, Edward Lucas testified generally regarding Andrew Lucas' relationships with Mr. Littlefield and Mr. Janoswki.

Lucas renewed his Rule 29 motion after the close of all the evidence. While Lucas moved for a judgment of acquittal as to all the charges in the Indictment, he did not make any additional argument on the record to support his motion, nor did he submit any briefing. Nevertheless, I find no basis to grant a judgment of acquittal based on the defense case.[2] Indeed, Lucas offered his testimony to directly contradict the Government's witnesses. In that regard, the jury was free to assess the credibility of various witnesses, including Defendant, and the jury was entitled to weigh the evidence offered by the parties. Simply, after all the evidence, Defendant did not sustain the high burden of showing that the Government's evidence was insufficient for a jury to find beyond a reasonable doubt that Defendant committed the offenses as charged in the Indictment.

Accordingly, the Court having considered the arguments of counsel, for the reasons set forth herein, and for good cause shown,

---

[2] I do not find it necessary to discuss each and every element of the offenses charged. Because I have discussed the evidence presented at trial relating to all of the Counts in the Indictment, my reasons for denying Defendant's Rule 29 motion are applicable to each of the Counts.

**IT IS** on this 6th day of May, 2015,

**ORDERED** that Defendant's Rule 29 motion is **DENIED** in its entirety.

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge
